JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jane Doe, A Pseudonym

**DEFENDANTS**

The School District of Philadelphia, et. al.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gregory S. Spizer, Esq./VSCP LAW
2001 Market St., Suite 3700
Philadelphia, PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument |     Liability   [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &     Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|    & Enforcement of Judgment |     Slander     Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'     Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted |     Liability   [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|     Student Loans | [ ] 340 Marine     Injury Product | |     New Drug Application | [ ] 470 Racketeer Influenced and |
|     (Excludes Veterans) | [ ] 345 Marine Product     Liability | | [ ] 840 Trademark |     Corrupt Organizations |
| [ ] 153 Recovery of Overpayment |     Liability   **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|     of Veteran's Benefits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards |     Act of 2016 |     (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending |     Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract |     Product Liability   [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** |     Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal     Property Damage |     Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |     Injury   [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -     Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) |     Exchange |
| |     Medical Malpractice |     Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee |     Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff |     Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/     Sentence | |     or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability |     Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty | **IMMIGRATION** |     26 USC 7609 |     Act/Review or Appeal of |
| |     Employment   **Other:** | [ ] 462 Naturalization Application | |     Agency Decision |
| | [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| |     Other   [ ] 550 Civil Rights |     Actions | |     State Statutes |
| | [ ] 448 Education   [ ] 555 Prison Condition | | | |
| |    [ ] 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983

Brief description of cause:
violation of civil rights leading to sexual abuse

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE
10/04/2022

SIGNATURE OF ATTORNEY OF RECORD
*Greg S. Spizer*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ C/O VSCP LAW; 2001 Market Street, Suite 3700, Philadelphia, PA 19104 _____

Address of Defendant: _____ 440 North Broad Street, Philadelphia, PA 19130 _____

Place of Accident, Incident or Transaction: _____ Parkway Center City High School and other locations _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 10/04/2022 _____  _____  82435

*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Gregory S. Spizer, Esq. _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 10/04/2022 _____  _____  82435

*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | | |
|---|---|---|---|
| **JANE DOE, (A Pseudonym)** | : | | |
| | : | | |
| v. | : | NO. 22-CV- 3947 | |
| | : | | |
| **THE SCHOOL DISTRICT OF PHILADELPHIA**: | | | |
| **SCHOOL REFORM COMISSION OF THE** | : | | |
| **SCHOOL DISTRICT OF PHILADELPHIA,** | : | | |
| **BOARD OF EDUCATION OF THE SCHOOL** | : | | |
| **DISTRICT OF PHILADELPHIA, ET. AL** | : | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See §1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)   Habeas Corpus - Cases brought under 28 U.S.C. §2241 through §2255.   (     )

(b)   Social Security - Cases requesting review of a decision of the Secretary
of Health and Human Services denying plaintiff Social Security Benefits.   (     )

(c)   Arbitration - Cases required to be designated for arbitration under Local
Civil Rule 53.2.   (     )

(d)   Asbestos - Cases involving claims for personal injury or property damage
from exposure to asbestos.   (     )

(e)   Special Management - Cases that do not fall into tracks (a) through (d)
that are commonly referred to as complex and that need special or intense
management by the court. (See reverse side of this form for a detailed
explanation of special management cases.)   (   x   )

(f)   Standard Management - Cases that do not fall into any one of the other
tracks.   (     )

| | | |
|---|---|---|
| 10/4/2022 | Gregory S. Spizer, Esquire | Plaintiff |
| Date | Attorney-at-Law | Attorney for |
| | | |
| 215-960-0402 | 215-960-0384 | gspizer@vscplaw.com |
| Telephone | Fax Number | E-Mail Address |

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE, A PSEUDONYM** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Civil Action Number:** |
| | : |
| **THE SCHOOL DISTRICT OF PHILADELPHIA** | : |
| | : |
| | : |
| **AND** | : |
| | : |
| **SCHOOL REFORM COMMISSION OF THE SCHOOL DISTRICT OF PHILADELPHIA** | : **COMPLAINT & JURY DEMAND** |
| | : |
| **AND** | : |
| | : |
| **BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PHILADELPHIA** | : |
| | : |
| **AND** | : |
| | : |
| **CATHERINE A. BLUNT, in her official capacity and individual capacity** | : |
| | : |
| | : |
| **AND** | : |
| | : |
| **JOHN DOES 1-20** | : |
| | : |
| **AND** | : |
| | : |
| **ABC ENTITIES 1-10** | : |
| | : |
| **Defendants.** | : |
| | : |

## <u>CIVIL ACTION COMPLAINT</u>

When Plaintiff, Jane Doe, a pseudonym, was a minor-student at the Parkway Center City High School, (sometimes also referred to as Parkway Center City[1]), within The School District of Philadelphia during the 2006 through 2010 years, she was repeatedly and regularly raped, sexually abused and sexually assaulted by Larry L. Perry, (hereinafter, "Perry"), a Parkway Center City High School teacher.  The School District of Philadelphia and associated School District Defendants and the Parkway principal during those years, Defendant Catherine Blunt, knew that Perry was using his authority and power as a teacher to sexually abuse minor-female students such as Jane Doe but despite this knowledge, the Defendants continued to employ and certify Mr. Perry as a teacher thereby allowing him to commit his horrific acts and abuse against Jane Doe.

Plaintiff, Jane Doe, by and through her undersigned counsel, VSCP LAW and Clemens Law, LLC, now files this Complaint against Defendants, The School District of Philadelphia, School Reform Commission of The School District of Philadelphia, the Board of Education of The School District of Philadelphia, Catherine A. Blunt, John Does 1-20, and ABC Entities 1-10, and avers as follows:

## **PARTIES**

1.   Plaintiff, Jane Doe, a pseudonym, is now an adult female whose name and address are not contained in this Complaint so as to protect her privacy and identity as she incurred injuries and damages of a sensitive nature while a student at Parkway Center City High School, (hereinafter, "Parkway" or "Parkway School"), within The School District of Philadelphia and thereafter.  Plaintiff may be contacted through her counsel as outlined herein.

2.   Defendant, The School District of Philadelphia, (sometimes hereinafter referred to as

---

[1] Parkway Center City High School/Parkway Center City is now referred to as Parkway Center City Middle College.

"School District"), is, and was at all relevant times, a school district, municipal corporation or other jural entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with a principal place of business at 440 North Broad Street, Philadelphia, Pennsylvania 19130.  The School District of Philadelphia operated the Parkway Center City High School/Parkway Center City (now known as Parkway Center City Middle College) where Plaintiff was a student from 2006-2010 and where Larry Perry was employed.

3.   At all relevant times, Defendant, The School District of Philadelphia, has provided educational services to minor children in Philadelphia County.

4.   Defendant, School Reform Commission of The School District of Philadelphia, (hereinafter, "School Reform Commission"), is a municipal corporation or other jural entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with a principal place of business at 440 North Broad Street, Suite 101, Philadelphia, Pennsylvania 19130.

5.   At all times relevant hereto, Defendant School Reform Commission adopted, oversaw, and/or enforced rules and regulations for management of school affairs and the conduct of employees and students within The School District of Philadelphia and Parkway.

6.   Defendant, Board of Education of The School District of Philadelphia, (hereinafter, "Board of Education"), is a municipal corporation or other jural entity organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania with a principal place of business at 440 North Broad Street, Suite 101, Philadelphia, Pennsylvania 19130.

7.     At all times relevant hereto, Defendant Board of Education adopted, oversaw, and/or enforced rules and regulations for management of school affairs and the conduct of employees and students within The School District of Philadelphia and Parkway.

8.     At all relevant times hereto, Defendants, The School District of Philadelphia, School Reform Commission and Board of Education, acted individually and by and through their duly authorized actual and/or apparent agents, servants, and employees, in particular, their principals, vice principals, school board, teachers, staff, supervisors and/or team coaches and/or activity coordinators, acting within the course and scope of their actual and/or apparent agency and/or employment.

9.     Defendant, Catherine A. Blunt, is an adult individual, who presently resides at 4918 Walton Avenue, Philadelphia, PA 19143.

10.     Defendant Blunt was employed by Defendants, The School District of Philadelphia, School Reform Commission and the Board of Education, and was the Principal of Parkway at times relevant hereto and, in this capacity, was responsible for ensuring that Parkway's students were safe from abuse and assault by its teachers and employees.

11.     Defendant Blunt is sued in her official and individual capacities for her actions made under color of state law and in violation of Plaintiff's constitutional rights as described more fully herein.

12.     John Does 1-20 are current or former principals, vice principals, school board members, teachers, staff, employees, supervisors and/or team coaches and/or activity coordinators who have been employed by or were under the control of Defendants, The School District of Philadelphia and/or School Reform Commission and/or Board of Education, who either worked at Parkway and/or adopted, oversaw and/or enforced rules and regulations for

management of school affairs and the conduct of employees and students within The School District of Philadelphia and Parkway.

13.     ABC Entities 1-10 are current or former public entities or private entities who were responsible to ensure the safety and protection of students at Parkway, and more specifically, to prevent the abuses described more fully herein from occurring.

14.     Accordingly, The School District of Philadelphia, School Reform Commission, Board of Education, Catherine A. Blunt, John Does 1-20 and ABC Entities 1-10, (hereinafter, "Defendants"), violated the clearly established federal Constitutional and statutory rights of Plaintiff under the Fourth and Fourteenth Amendments by subjecting Plaintiff to harmful and degrading sexual abuse and sexual assault by affirmatively placing Mr. Perry in positions to sexual abuse Plaintiff despite undisputed knowledge of his prior abuse of young female students.

15.     Defendants caused the injuries and harms to Plaintiff by failing to train, supervise and discipline Mr. Perry and, as a result, he engaged in the prohibited sexual abuse of Plaintiff on a systematic basis with the expectation that his conduct would not be subject to discipline or sanctions.

16.     Defendants caused the injuries and harms to Plaintiff by failing to train, supervise and discipline the staff at Parkway, including, but not limited  to, teachers, principals, administrators, security personnel, aides and the John Doe Defendants and, as a result, staff at Parkway, including the John Doe Defendants, continually placed female students, including Plaintiff, in harm's way, by exposing them to Mr. Perry despite undisputed knowledge that he sexually abused young female students.

17.     By exposing Plaintiff to Mr. Perry, a known sexual abuser of young, female students, Defendants have shown a reckless disregard and deliberate indifference to the widespread violation of Plaintiff's constitutional rights.

18.     Defendants have acted recklessly and have been callously and deliberately indifferent to the violation of Plaintiff's constitutional rights when they continued to employ Mr. Perry as a teacher at Parkway and expose young girls to his sexual abuse despite knowing for years prior to his abuse of Plaintiff that Mr. Perry had sexually abused other young, female students in the past.

19.     Because of Defendants' conduct, Plaintiff suffered and will continue to suffer from physical bodily injuries, severe emotional distress, physical manifestation of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

20.     Plaintiff has and will in the future sustain loss of earnings and earning capacity and has, and will, incur expenses for medical and psychological treatment, therapy and counseling. Defendants are liable for same as described more fully below.

21.     Defendants herein are liable to Plaintiff for injuries she has sustained as a result of their violations of Plaintiff's constitutional rights as described further herein by persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Plaintiff's injuries.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. At all relevant times, Defendants acted under the color of state law.

6

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## OPERATIVE FACTS

24.     Plaintiff incorporates by reference and realleges all of the above paragraphs as though fully set forth herein.

25.     This case is about an educational institution and entities that had special responsibilities and obligations to ensure that the most innocent amongst us – children and students – were protected from sexual abuse by their own agents, servants and/or employees and the complete and utter failure of this educational institution and its agents, servants and/or employees to fulfill this duty and responsibility.  Instead of ensuring that Plaintiff was safe from abuse and harm, the Defendants and their actual and/or apparent agents, servants and employees, including Defendant Catherine A. Blunt, placed Plaintiff and other juveniles into the path of a known predator and, worse yet, they continued to certify Mr. Perry to be a teacher at Parkway so that he had ample opportunity to abuse children.  The School District of Philadelphia, the School Reform Commission and the Board of Education and their agents, actual or apparent, servants and employees, including Catherine A. Blunt, failed in a myriad of ways to protect Plaintiff, including, but not limited to: inadequately vetting their teachers and staff, including Larry Perry; not properly training and/or supervising their teachers and staff; recklessly retaining a teacher they knew was a sexual predator; deliberately ignoring clear and obvious signs of grooming behaviors by teacher, Larry Perry; performing a grossly inadequate investigation of Mr. Perry after reports of his concerning and sexual abusive behavior was reported to Defendants, including Defendant Catherine Blunt; violating the Pennsylvania Child Protective Services Law

(23 Pa.C.S. Chapter 63) by not reporting Mr. Perry's abuse as required by law; and creating an environment in which staff such as Mr. Perry engaged in conduct that violated several Pennsylvania criminal statutes including Sexual Assault (18 Pa. C.S.A. §3124.1); Institutional Sexual Assault (18 Pa. C.S.A. §3124.2); Aggravated Indecent Assault (18 Pa. C.S.A. §3125); Indecent Assault (18 Pa. C.S.A. §3126); Corruption of Minors (18 Pa. C.S.A. §6301); and Endangering the Welfare of a Child (18 Pa. C.S.A. §4304). Defendants affirmatively exposed Plaintiff to years of sexual assault and abuse as well other students to a predator.

26.     Larry Perry, who has been held criminally responsible for his sexual abuse of Plaintiff and was recently sentenced to an over 8-year state prison sentence for his crimes, was, at all relevant times, acting in the course and scope of his employment as a teacher and staff member at Parkway when he openly seduced, coerced, groomed and manipulated Plaintiff. Perry engaged in a carefully orchestrated yet easily discernible plot to control Plaintiff's personal thinking and belief systems so that he could engage in illicit and illegal sexual activity with her. All of the Defendants' actions set forth herein allowed Perry to regularly and repeatedly abuse and assault Plaintiff, resulting in severe and permanent injuries to her.

27.     Upon information and belief, Perry had been either a substitute or permanent teacher at Parkway for years when Plaintiff began her freshman year at Parkway in 2006.  In addition to being a teacher at Parkway, Perry also served as a faculty advisor to extracurricular groups which met both during and after school.

28.     Prior to Perry's abuse of Plaintiff, Perry had also abused other minor-female students at Parkway.  In fact, Perry admitted to Plaintiff that he had relations with a number of prior students. Defendants were aware of such abuse.

29.     In September 1998, Perry was in a live-in, co-habitating relationship with a woman with whom Perry shared an apartment in Northeast Philadelphia at the time. The woman, hereinafter referred to as "Girlfriend", was in her twenties at the time.

30.     Girlfriend came home from work one day to find a juvenile female student of Perry's from the Parkway School in Girlfriend's apartment with Perry. Girlfriend confronted Perry about the reasons for the juvenile female student being in the apartment, and when Perry gave a school-related excuse, Girlfriend informed Perry that was inappropriate nonetheless, and Girlfriend then drove the juvenile female student home.

31.     A few weeks later, on November 11, 1998, (Veteran's Day), Girlfriend returned to her and Perry's apartment unexpectedly, during lunch, to retrieve an item for work that afternoon. Upon entering the apartment, Girlfriend was surprised to see the juvenile female student's vest – the same one she had been wearing weeks prior – on the futon in the apartment. Perry then ran out of their bedroom, naked except for a bedsheet around his waist, sweating profusely and with an erection showing under the bedsheet.

32.     Perry ran into the second bedroom of the apartment after embarrassingly telling Girlfriend that "It wasn't what it looked like."

33.     Girlfriend then went into the bedroom and found the juvenile female student hiding in a closet, disheveled and distraught.

34.     Girlfriend had the juvenile female student come physically out of the closet, and attempted to console her, telling her that it was not her fault.

35.     Girlfriend then went into the other bedroom to confront Perry, at which time the juvenile female student ran from the apartment.

36.     Girlfriend immediately kicked Perry out of the apartment.

9

37.     Girlfriend then called Perry's stepfather (last name "Lee" upon information and belief), and mother, Melva, to inform them about what had occurred.

38.     Days later, Melva approached Girlfriend and offered Girlfriend money to keep quiet about the incident, informing Girlfriend that her (Melva's) brother was just recently elected to be president of the school board.  Girlfriend refused the money and told Melva that Perry needed help.

39.     As Girlfriend packed up Perry's items for removal from the apartment, she found letters and cards that Perry had written to the juvenile female student and ones that the student had written to Perry.

40.     Girlfriend went to the Parkway School, accompanied by her sister, to inform the principal of the Parkway School at the time (an African-American female in her mid-to-late 50's), about her observations of Perry's sexual relationship with a juvenile student, and also to provide the letters and cards that Perry had written to the juvenile female student.

41.     Girlfriend found the principal to be disinterested in the revelations and called two students in to make copies of the letters and cards.  Surprisingly to Girlfriend, the principal kept the original cards and letters.

42.     Instead of further pursuing Girlfriend's horrific revelation regarding Perry, the principal dismissed Girlfriend and Girlfriend was never contacted by anyone from Parkway or The Philadelphia School District again.

43.     Upon information and belief, the School District Defendants did not conduct any meaningful investigation whatsoever regarding these revelations from Girlfriend as Mr. Perry was only removed from his teaching position for a few days and it is further understood upon

information and belief that his School District personnel file does not reflect that any investigation was undertaken.

44.     It is also understood upon information and belief that the School District, Board of Education and School Reform Commission did not report Perry's behavior to the legal authorities which was a violation of Pennsylvania's Child Protective Services law.

45.     Prior to Plaintiff's enrollment in the Parkway School, the Defendants had direct knowledge of Perry's criminal, abusive and predatory behavior yet the Defendants continued to employ Perry as a teacher at the Parkway School; in so doing, Defendants allowed and permitted a predator with an insatiable appetite for minor female students to roam the halls of Parkway School, in the guise of a teacher, so that he could continue to prey upon vulnerable, minor female students.

46.     A few years after Girlfriend reported Perry's abuse of a Parkway female student, additional reports were made to Defendants and, specifically, Defendant Blunt.

47.     A few years following Girlfriend's report to Defendants, Defendant Blunt became a principal of the Parkway School and Mr. Perry continued to be employed there as a teacher despite the reports of abuse a few years earlier.

48.     Perry did not change his ways as female students at Parkway were subjected to inappropriate sexual comments and unwanted touching.

49.     For example, one female student at Parkway between the years 2000 and 2003 reported that she and her friends would wear apple bottom jeans as they were popular at the time. When she and her friends would wear apple bottom jeans, Perry would tell them that he "wanted to go bobbing for apples."

50.     This same female student also described other instances where Perry would approach her when she was alone and try to touch her and/or would continue to make inappropriate comments with sexual connotations.

51.     This student was so upset and disturbed by Perry's behavior – the sexual comments and attempts to touch her - that she reported him to Defendant Blunt.

52.     However, Defendant Blunt did not take the female student's report seriously, performed no investigation and, in fact, she told the student, "Here we go again, you girls making stuff up again."

53.     Despite Defendant Blunt being made aware by this female student as well as other students of Perry's inappropriate behavior, it is understood upon information and belief that Perry's personnel file is devoid of any reference to these complaints and Defendant Blunt continued to certify and employ Perry as a teacher at Parkway.

54.     It is also understood upon information and belief that none of the Defendants reported Perry's behavior to the legal authorities which was again a violation of Pennsylvania's Child Protective Services law.

55.     It is also understood upon information and belief that Perry's grooming and sexual interest in young, female students was well known throughout Parkway – by staff/faculty and other students.

56.     As proof thereof, the female student who attended Parkway from 2000 – 2003 told another teacher at the school about Perry's words and actions.  He offered for this student to go to his classroom if she ever needed to feel safe.

57.     Despite these multiple complaints, reports and knowledge of Perry's abusive behavior prior to Plaintiff's enrollment at Parkway, Perry continued to be employed as a teacher

at Parkway and have exposure to minor-female students, including Plaintiff a few years later. It was in this capacity that he first met Plaintiff.

58. When Plaintiff began her freshman year at Parkway, she was only 13 years old. Perry was her literature teacher. Perry also was a faculty advisor for an after-school group that Plaintiff's older brother attended. Plaintiff would also go to the after-school group because her brother would take her home once he was finished with the group for the day.

59. Perry was known as the cool teacher and was considered cool by the kids.

60. For this reason, Plaintiff was excited when Perry paid her special attention during his teaching of her freshman year as well as when she attended the after-school group to which Perry was an advisor.

61. It was during freshman year that Perry began to groom and set his sights on Plaintiff. He would make inappropriate jokes to Plaintiff and he also started touching and caressing Plaintiff's face and buttocks.

62. During her sophomore year, Perry had the opportunity to increase his grooming and abuse of Plaintiff as Plaintiff's brother had graduated and Defendants continued to place Perry in a position where he could abuse Plaintiff.

63. Perry's classroom was directly next to the lunchroom so he would see Plaintiff every day. He started inviting Plaintiff to have lunch with him in his classroom and he would buy her lunch. Although students should not have been eating lunch alone with a teacher, the Defendants did not stop Perry from doing so even though its occurrence would or should have been obvious to the Defendants.

64. Perry also started to drive Plaintiff home after school. He would make Plaintiff wait in his classroom until the other students had left. Amazingly, the Defendants, upon

information and belief, had no policies or procedures in place to make sure that this activity right

in front of their eyes would not happen or if they did exist, they were not followed or enforced.

To conceal his driving Plaintiff home, Perry would follow a SEPTA bus to Plaintiff's home so

Plaintiff's mother, who waited for her, would think that her daughter had taken the SEPTA bus

home from school.

65.     Perry also knew that it would be easy to groom, influence and control Plaintiff as

her parents did not speak English and his actions and abuse would likely not be noticed by Jane

Doe's family.

66.     Perry's abuse increased as Plaintiff's sophomore year continued.  Perry sent

Plaintiff texts, emails and other forms of digital communications that were intimate and

flirtatious.  To cover his tracks, Perry provided Plaintiff with a prepaid phone.  Upon information

and belief, Defendants had no policies in place to ensure that The School District of Philadelphia

employees could not communicate electronically with students or such policies, if they did exist,

were not enforced.

67.     Perry would ask Plaintiff, only 14-15 years old at the time, for nude pictures

which, due to his influence over her, she would send him.

68.     In addition to this digital abuse, Perry increased his physical and sexual abuse of

Plaintiff.  He started kissing her, touching her and climbing on top of her in his classroom.  He

would kiss and touch her in his car as well.  Perry never should have been a teacher at Parkway

at this time and should not have been allowed to be alone with Plaintiff in his classroom but

Defendants, including Defendant Blunt who was Parkway's principal at the time, continued to

certify him as a teacher and place him in a position where he could abuse Plaintiff.  Through

14

Defendants' reckless and deliberately indifferent actions, they exposed Plaintiff to Perry who was able to control and assert influence over her.

69.     The summer between Plaintiff's sophomore and junior year, Perry started bringing Plaintiff out to his home in Willow Grove. It was on these trips to his home during this Summer that Perry first raped Plaintiff.  The rapes of Plaintiff continued and occurred throughout the rest of her high school years. This only happened because Defendants, despite multiple reports of his abuse of minor-female students many years earlier, nevertheless allowed Perry, an adult male, to have unfettered access to Plaintiff, a minor-female student, in school during her freshman and sophomore years with no fear of consequences. This allowed him to control, manipulate and have great influence over a minor.

70.     During Plaintiff's junior and senior years, the abuse continued. Rapes of Plaintiff continued to occur at Perry's home in Willow Grove.  Also, Perry continued to touch Plaintiff in school, including one time locking the door to his room, bringing her to the back of the classroom and touching her and groping her and placing his private parts upon her as he pushed her up against the back of the room.  Once again, Defendants affirmatively allowed Perry to be in a position to abuse Plaintiff, a minor female student.

71.     Plaintiff would have lunch with Perry every day in his classroom despite the entire school seeing this and the inappropriateness of it.

72.     Upon information and belief, teachers started noting that Perry was spending a lot of time with Plaintiff but they continued to allow Perry to have unfettered access to Plaintiff.  It is, upon information and belief, also understood that specific teachers who were friends with Perry definitively knew about the relationship but did not report the abuse despite being mandatory reporters under Pennsylvania law.

73.     A school Police Officer, (hereinafter "S.P.O."), worked for the Defendants at Parkway during the time that Plaintiff was a student there.

74.     Upon information and belief, S.P.O. noticed that Perry spent an inordinate amount of time around Plaintiff, Jane Doe.

75.     It is understood upon information and belief that a noontime aide at Parkway, (hereinafter "Aide 1 "), informed S.P.O. that as she (Aide 1) was driving home on I-95, she looked to the car next to her and noticed Perry driving his car with Plaintiff in the passenger's seat.  Upon Perry looking over and noticing Aide 1, he had Plaintiff lay back in the seat so that Plaintiff could not be seen and Perry then sped ahead to avoid Aide 1 further noticing him with Plaintiff.

76.     It is also understood upon information and belief that noontime aides, Aide 1 and another aide, Aide 2, and the S.P.O. often conversed about Perry and Plaintiff.

77.     S.P.O. was walking down the hallway one afternoon when Perry's and Plaintiff's backs were towards her.  Perry and Plaintiff were conversing in a hushed tone, at which time Perry looked back and saw S.P.O. approaching.  Perry then instructed Plaintiff to cease the conversation and drew Plaintiff's attention to S.P.O. as the reason for the conversation abruptly ending.

78.     Upon information and belief, due to her concern about Perry's constant presence with Plaintiff, S.P.O. went to Parkway's principal at the time, Defendant Blunt, to share all of the concerning and alarming behavior that Perry was exhibiting with respect to Plaintiff.  It is understood upon information and belief that during this conversation, S.P.O. informed Blunt about her own observations, as well as those relayed to S.P.O. by others, including the noontime aides.

79.     Approximately one week later, it is understood upon information and belief that Blunt called S.P.O. back into her office when, upon entering, S.P.O. was surprised to see that Perry was also in the office.

80.     Upon information and belief, Perry had clearly been told by Blunt about the concerns relayed to her by S.P.O. as Perry confronted S.P.O. about the concerns by proclaiming that he had been investigated previously regarding similar allegations, and that nothing happened to him.

81.     It is understood upon information and belief that Blunt then told S.P.O. that since they had the conversation, that this now concluded the matter, and excused S.P.O. from the office.

82.     Despite these reports being made to Defendant Blunt, a mandatory reporter, there is, upon information and belief, nothing in Perry's School District personnel file to reflect any investigation was undertaken regarding these allegations. There are also no reports that Defendant Blunt reported these claims of abuse, as she was required by law, to the appropriate authorities. Shockingly, Defendants ignored all of the abuse allegations against Perry, did not report them as required under law and continued to place Perry in a position where he could harm Plaintiff.

83.     Prior to confronting Blunt about Perry's troubling behaviors toward Plaintiff, it is understood upon information and belief that S.P.O. had confided in other staff members that she was going to do so and in response, staff told S.P.O. to "be careful" because Perry helped Blunt keep up the test scores.

84.     In addition to the Principal and other staff members being aware of the inappropriate conduct between Perry and a minor-female student, other students in school started

17

talking about Perry's grooming and encounters with Plaintiff. Students were literally saying, "Larry is f-ing Jane Doe." It was so widely discussed in school that it would have been impossible for Defendants and their agents, servants and employees to not know what was occurring but once again, Defendants continued to employ Perry and place him in a position where he could harm Plaintiff.

85.     In order to clamp down the talk and again try and cover up his abuse, it is understood upon information and belief that Perry addressed the comments with students in his class and said that if the talk and rumors about him and Jane Doe did not stop, he will fail the students and they will not graduate.  Defendants allowed him to threaten students with no repercussions.

86.     Perry continued to abuse Plaintiff even after she graduated from Parkway.  He had such influence and control over her that he was able to continue to abuse her, drive her away from her family, convince her to attend a college close to his home in Willow Grove and generally continue to control her.  None of this would have been possible if not for the complete and utter deliberately indifferent and reckless failures by all Defendants.

87.     After growing and maturing and realizing that Perry was a rapist and an abuser, Plaintiff got away from Perry's grip and has tried to move on with her life, but the abuse Jane Doe suffered has severely and permanently scarred and injured her.

88.     As a result of being repeatedly and regularly sexually abused, assaulted, controlled and manipulated by Perry due to all Defendants' recklessness and callous and deliberate indifference towards her, Plaintiff has undergone and continues to undergo, intensive therapy to treat her severe depression and mental anguish which has caused her to attempt suicide in the past.

89.     As a result of being repeatedly and regularly sexually abused, assaulted, controlled and manipulated by Perry due to all Defendants' deliberate indifference and recklessness, Plaintiff's entire life has been upended and permanently damaged.

90.     The sexual abuse that occurred for years was caused solely and exclusively by the recklessness and deliberately indifferent actions of all Defendants, their employees, actual and/or apparent agents, and/or servants.  In no manner was it due to any act or failure to act on the part of Plaintiff.

91.     But for the acts and omissions of all Defendants, their employees, actual and/or apparent agents, and/or servants, Plaintiff would not have been subjected to years of sexual abuse.

92.     As a direct and proximate result of the deliberate indifference and recklessness of Defendants, their employees, agents, apparent and/or actual, and/or servants, Plaintiff suffered severe and permanent injuries, including, *inter alia*, the following:

a.     rape and/or involuntary sexual relations and its signs, symptoms and sequalae;

b.     depression and emotional distress;

c.     anxiety;

d.     fear and fright;

e.     various and severe painful bodily injuries;

f.     past and future psychological injuries and conditions;

g.     past and future psychiatric injuries and damages;

h.     past and future pain and suffering;

i.     past and future medical expenses;

j.     past and future mental anguish;

k.     past and future embarrassment;

l.     past and future humiliation;

m.     past and future loss of life's pleasures;

19

n.     past and future lost wages;

o.     future loss of earning capacity; and

p.     all other damages as may be permitted under law.

## COUNT I – 42 U.S.C. §1983
## PLAINTIFF V. ALL DEFENDANTS
## DEPRIVATION OF RIGHTS BY VIRTUE OF STATE CREATED DANGER

93.    Plaintiff incorporates by reference and realleges all of the above paragraphs as though fully set forth herein.

94.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. §1983 that challenges the constitutionality of the actions by Defendants, The School District of Philadelphia, Board of Education, School Reform Commission, Catherine Blunt, John Does 1-20 and ABC Entities 1-10, that resulted in severe injuries to Plaintiff.

95.    At all times relevant hereto, Defendant, Catherine Blunt and John Does 1-20, acting in their individual and official capacities, and The School District of Philadelphia, Board of Education, School Reform Commission and ABC Entities 1-10, were all "persons"  and acting under color of state law pursuant to 42 U.S.C. §1983.

96.    The specific harms to which Defendants exposed Plaintiff were foreseeable and direct in that they knew that retaining and employing a known sexual predator to teach at Parkway which would provide him with direct access to minor-female students would subject Plaintiff to continuous and regular abuse which would result in severe and lasting harm to Plaintiff.

97.    At all times material hereto, Defendants were bound, as previously set forth

herein, by the Fourth and Fourteenth Amendments to the United States Constitution as well as, upon information and belief, their own policies, rules and regulations for the management, safety, care and oversight of children placed in their care, custody and control.

98.     In direct contravention and in violation of the Fourth and Fourteenth Amendments as set forth above and, upon information and belief, in violation of their own policies, procedures and regulations, Defendants recklessly, willfully and with deliberate indifference, certified Perry as a teacher, retained him year after year, and continued to employ him at Parkway, despite knowing for several years prior to Plaintiff's time at Parkway that Perry was a sexual predator and, by doing so, provided him with access to young female students such as Plaintiff that he would repeatedly and continuously rape and abuse.

99.     While acting under color of state law, Defendants affirmatively created the danger or risk of harm that led to Plaintiff's sexual abuse, sexual assault and permanent and life-long damages as follows:

      a.     Enrolling Plaintiff in Perry's class;

      b.     Approving Perry for retention after review of his conduct;

      c.     Removing the prior complaints about Perry from his employee file;

      d.     Hiding the information about prior complaints about Perry from his future supervisors;

      e.     Deliberately refusing to document the prior complaints about Perry;

      f.     Conducting a disingenuous investigation into the prior complaints about Perry;

      g.     Conducting an investigation into the prior complaints about Perry with a preconceived outcome;

21

h.      Creating an environment which allowed Perry to sexually abuse Plaintiff, a minor female student;

i.      Creating an environment so that Perry could engage in illegal sexual conduct with a student on School District's premises before, during and after school hours;

j.      Creating an environment in which Perry could groom Plaintiff, including engaging in sexual conversations and/or inappropriate touching and/or sexual activity during school hours;

k.      Creating an environment in which Perry violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Sexual Assault (18 Pa. C.S.A. §3124.1); Institutional Sexual Assault (18 Pa. C.S.A. §3124.2); Aggravated Indecent Assault (18 Pa. C.S.A. §3125); Indecent Assault (18 Pa. C.S.A. §3126); Corruption of Minors (18 Pa. C.S.A. §6301); and Endangering the Welfare of a Child (18 Pa. C.S.A. §4304);

l.      Not properly and adequately supervising and disciplining their staff to prevent the sexual abuse that occurred to Plaintiff;

m.      Disregarding policies and procedures for the protection and reasonable supervision of minors who attended Defendants' school, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

n.      Creating an environment that facilitated sexual abuse by employees, including Perry;

o.      Performing a reckless, grossly inadequate and deliberately indifferent investigation of Perry when reports of his sexual abuse and inappropriate contact with minors was brought to Defendants' attention;

p.      Ratifying Perry's conduct;

q.      Violation of duties imposed by Office of Children and Youth, the Pennsylvania Department of Education or other authorities;

r.      Violating the requirements of Pennsylvania's Child Protective Services Law, 23 Pa.C.S. §6311(a) and (b), and/or the Educator Discipline Act, 24 P.S. §§ 2070.1 *et. seq.*

s.      Concealing and mitigating the seriousness of the known danger that Perry posed;

t.      Disregarding reports by students' of Perry's danger;

u.      Disregarding reports by other Parkway staff members of Perry's danger;

v.      Disregarding reports by Perry's former girlfriend of his sexual abuse of another minor-female student;

w.      Continuing to employ Perry after reports that he had previously sexually abused minors thereby exposing Plaintiff to his danger;

x.      Continuing to certify Perry as a teacher at Parkway despite the reports that he previously sexually abused minors;

y.      Continuing to employ Perry once reports of his inappropriate conduct with Plaintiff were made known to Defendant Blunt;

z.      Keeping grossly inadequate personnel records of Perry which did not reflect his abusive past;

23

aa.     Inadequately and improperly training their employees regarding reporting of suspected sexual abuse;

bb.     Inadequately and improperly monitoring and supervising their employees thereby allowing the abuse of Plaintiff to occur;

cc.     Recklessly placing Plaintiff in a place which Defendants knew exposed her to harm and Perry's abuse;

dd.     Granting access to Perry to enter and remain on the Parkway premises;

ee.     Recklessly and deliberately indifferently managing and operating Defendants' school; and

ff.     such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

100.    Defendants, while acting under color of state law, unlawfully, and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference to Plaintiff's rights, violated 42 U.S.C. § 1983 and deprived Plaintiff of her rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and other laws in that these Defendants, without lawful basis, caused Plaintiff's severe and significant injuries and damages by creating the danger to which Plaintiff was exposed, in violation of her aforesaid guaranteed rights, as set forth in the preceding paragraphs of this Complaint.

101.    The danger affirmatively created by Defendants, as set forth above, was foreseeable and direct.

102.    The actions of Defendants in their deliberate or reckless indifferent, and callous disregard for the foreseeable danger they created for Plaintiff, shocks the conscience.

103.    In creating the danger as set forth above, Defendants acted in a willful disregard for the safety of Plaintiff.

104.    As the facts set forth in this Complaint demonstrate, Defendants knew or should have known that by continuing to certify and employ Perry as a teacher at Parkway was dangerous and that through their actions, Plaintiff was exposed to serious harm and such conduct established a deliberate indifference towards Plaintiff on behalf of Defendants.

105.    Defendants' affirmative actions violated Plaintiff's constitutional right to personal liberty and security and her right to due process guaranteed by the Fourteenth Amendment.

106.    Defendants' acts as described in the preceding paragraphs of this Complaint were the direct and proximate cause of Plaintiff's injuries and Defendants are therefore liable to Plaintiff under 42 U.S.C. § 1983.

## COUNT II - 42 U.S.C. § 1983
## PLAINTIFF V. ALL DEFENDANTS
## FAILURE TO INTERVENE

107.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

108.    By their conduct and under color of state law, Defendants had knowledge of Perry's predatory behavior towards minor-female students and had opportunities and responsibilities to intervene and prevent or stop the abuse that was occurring to Plaintiff to prevent the violation of her clearly established constitutional right to be free from sexual assault and rape and, therefore, violations of her personal security but, with deliberate indifference, failed to do so.

109.     The failures of Defendants were made in a willful disregard for the safety of Plaintiff and a reckless or callous indifference for her protected rights.

110.     Defendants' acts, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to her under 42 U.S.C. § 1983.

### COUNT III – 42 U.S.C. § 1983

### PLAINTIFF V. SCHOOL DISTRICT OF PHILADELPHIA, BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF PHILADELPHIA, SCHOOL REFORM COMMISSION OF THE SCHOOL DISTRICT OF PHILADELPHIA AND ABC ENTITIES 1-10
### MUNICIPAL LIABILITY CLAIM

111.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

112.     Defendants, The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, by and through its final policymakers, had in force and effect during the time that the abuse occurred to Plaintiff and for many years preceding the abuse to Plaintiff, a policy, practice or custom of unconstitutional misconduct in the care, custody, supervision, reporting, handling  and/or control of their employees who were alleged to have engaged in sexual assaults and abuse of students at Defendants' Parkway School.  Such unconstitutional misconduct includes the acts and abuses that are described in the preceding paragraphs of this Complaint.

113.     This policy and/or custom of misconduct regarding the reporting and handling of sexual abuse by Defendants' employees, whether written and adopted as an official policy, or

26

enforced as a customary practice, were implemented by Defendants' policymakers and officers, including Defendant Blunt.

114.    Defendants, The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, had actual or constructive notice of these unconstitutional policies, practices and customs, but repeatedly failed to make any meaningful investigation into the manner in which reports of sexual assaults and sexual abuse by their employees were handled.

115.    The dangerous policies and/or customs of not appropriately reporting, handling or addressing reports of sexual assaults and abuse by their employee-teachers were a result of the Defendants', The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, deliberate indifference to the rights of Plaintiff which were violated by those unconstitutional practices as outlined in the preceding paragraphs of this Complaint.

116.    Such unconstitutional municipal customs, policies and/or practices with respect to how reports of sexual abuse and sexual assaults by Defendants' employees were reported, handled and addressed were the moving force behind the abuse that occurred to Plaintiff and the injuries and damages that she sustained.

117.    These unconstitutional and improper policies and customs of the Defendants, The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, in how they handled, reported and addressed reports of sexual assault by their employees persisted

for a significant period of time which continued throughout the time during which Plaintiff was abused which demonstrates the deliberate indifference of The School District of Philadelphia, Board of Education of The School District of Philadelphia and School Reform Commission of The School District of Philadelphia and ABC Entities 1-10 and the violations of Plaintiff's constitutional right to personal liberty and security and her right to substantive due process guaranteed by the Fourteenth Amendment.

118.    Defendants, The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, by and through its agents, including Defendant Blunt and Defendant Blunt's predecessor at Parkway, also failed, with deliberate indifference, to properly train, supervise and discipline its staff and employees at Parkway, including the John Doe 1-20 Defendants.  As a direct and proximate result of The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities' failure to train, supervise, monitor, discipline, oversee and control the administrators and staff at Parkway, including the John Doe 1-20 Defendants, Plaintiff was subjected to a deprivation of her personal liberty and security in violation of her Constitutional rights.

119.    The failures of Defendants, The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, to train, supervise and discipline administrators and staff at the Parkway School included:

    a.    failure to train and supervise their employees to ensure that sexual assaults and abuse against minor-female students would not occur;

28

b.      failure to train and supervise their employees to ensure that they undertake and conduct appropriate, complete and adequate investigations into reports of sexual abuse of staff against minor-female students;

c.      failure to train and supervise their employees to ensure they do not ignore reports of sexual abuse by staff against minor-female students;

d.      failure to train and supervise their employees to ensure that they do not ignore complaints from students of inappropriate sexual contact and sexual connotations by staff;

e.      failure to train and supervise their employees to ensure that they do not retain and/or employ staff members who have sexually abused and assaulted minor-female students;

f.      failure to train and supervise their employees to ensure that they do not continue to certify and employ teachers who sexually abuse and sexually assault minor-female students;

g.      failure to train and supervise their employees to ensure that they do not expose minor-female students to a teacher, Perry, who grooms and sexually assaults minor-female students;

h.      failure to train and supervise their employees to ensure that they do not fail to report claims of sexual abuse by staff against minor-female students;

i.      failure to train and supervise their employees to ensure that they abide by Pennsylvania's mandatory reporting laws with respect to sexual assaults and sexual abuse of minor-female students;

29

j.      failure to train and supervise their employees to ensure that they adhere to Pennsylvania's Child Protective Services Law and Educator Discipline Act;

k.      failure to train and supervise their employees to ensure that they have protocols and procedures in place to identify and stop sexual abuse of minor-female students by staff members;

l.      failure to train and supervise their employees to ensure that they adhere to protocols, policies and procedures for handling complaints of sexual abuse by staff against minor-female students;

m.     failure to train and supervise their employees to ensure that they do not ignore concerns of inappropriate sexual contact between staff and minor-female students that are made by other staff members;

n.      failure to train and supervise their employees to appreciate the dangers in exposing minor-female students to a teacher who has sexually assaulted and abused prior minor-female students;

o.      failure to train and supervise their employees to ensure that they do not disregard complaints of inappropriate sexual behaviors by a staff member;

p.      failure to train and supervise their employees to ensure that the students under their care and control are not exposed to known sexual abusers;

q.      failure to train and supervise their employees to ensure that students are not placed in isolated positions where they could be harmed by staff members;

r.      failure to train and supervise their employees to ensure that they do not and cannot contact students outside of school hours;

30

s.     failure to train and supervise their employees to ensure that they do not communicate with students via cell phones;

t.     failure to train and supervise their employees to ensure that they do not drive students home after school;

u.     failure to train and supervise their employees to ensure that they do not eat lunch alone with students;

v.      failure to train and supervise their employees to ensure that they do not have the ability and opportunity to sexually assault and sexually abuse minor-female students;

w.     failure to train and supervise their employees to ensure that students are not threatened from reporting inappropriate sexual contact between staff members and minor-female students;

x.     failure to train and supervise their employees to ensure that reports of sexual assault by staff against minor-female students are appropriately investigated and documented in an employee's personnel file;

y.     failure to train and supervise their employees to ensure that employees' personnel files are appropriately documented with any complaints, concerns, claims or reports of sexual abuse; and

z.     failure to train and supervise their employees to ensure that those who have sexually abused and sexually assaulted prior minor-female students are never permitted to work in their schools.

120.   Defendants', The School District of Philadelphia, Board of Education of The

School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, acted in a willful disregard for the safety of Plaintiff and a reckless, callous and deliberate indifference to her protected rights.

121.   Defendants', The School District of Philadelphia, Board of Education of The School District of Philadelphia, School Reform Commission of The School District of Philadelphia and ABC Entities 1-10, acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and are therefore liable to her.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** in consideration of the above claims, Plaintiff, Jane Doe, requests that due to all Defendants' conduct as alleged herein, that Plaintiff be awarded damages including, but not limited to, the following:

    a.   All available compensatory damages for the described losses with respect to each cause of action;

    b.   Past and future medical expenses, as well as the costs associated with past and future life care;

    c.   Past and future lost wages and loss of earning capacity;

    d.   Past and future emotional distress;

    e.   Consequential and/or special damages;

    f.   All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.   Punitive damages with respect to each cause of action;

    h.   Reasonable and recoverable attorney's fees;

    i.   Costs of this action; and

    j.   Pre-judgement and all other interest recoverable.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

**VSCPLAW** VAN NAARDEN · SPIZER
CHASE · PINTO

BY:    */s/ Gregory S. Spizer, Esquire*
GREGORY S. SPIZER, ESQUIRE
JULIA R. RONNEBAUM, ESQUIRE
Attorney ID Nos. 82435/326785
Two Commerce Square
2001 Market Street Suite 3700
Philadelphia, PA 19103
(215) 960-0000
gspizer@vscplaw.com


**CLEMENS LAW, LLC**

BY:    */s/ Thomas C. Clemens, Esquire*
THOMAS C. CLEMENS, ESQUIRE
Attorney ID No. 309812
1717 Arch Street, Suite 320
Philadelphia, PA 19103
(215) 630-5046
tclemenslaw@gmail.com

*Attorneys For Plaintiff*

DATED: October 4, 2022