IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE**, *Plaintiff,* v. **THE SCHOOL DISTRICT OF PHILADELPHIA**, *et al.*, *Defendants.* | **Case No. 2:22-cv-03947-JDW** |

### ORDER

**AND NOW**, this 5th day of April, 2023, upon consideration of Defendants' Motion to Dismiss (ECF No. 22), I note the following.

1. A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The Third Circuit has a three-step process to determine whether a complaint meets this standard. First, the court must identify the elements needed to state a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, the court should accept as true well-pleaded allegations and "determine whether they plausibly

give rise to an entitlement to relief." *See id.* The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790. In deciding a motion to dismiss, the court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b).

**Statute Of Limitations**

2.     Section 1983 does not include a statute of limitations. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 267 (1985).

3.     In Pennsylvania personal injury cases, the general statute of limitations is two years. *See* 42 PA. STAT. AND CONS. STAT. ANN. §5524 (2004). However, there is a separate statute of limitations for victims of childhood sexual abuse. *See* 42 PA. STAT. AND CONS. STAT. ANN. §5533(b)(2)(i) (2019). Section 5533(b)(2)(i) states that a minor "entitled to bring a civil action arising from sexual abuse … shall have a period of 37 years after attaining 18 years of age in which to commence an action for damages[.]" While the Third Circuit has not addressed head-on whether this extended statute of limitations applies to Section 1983 claims, several decisions support the inference that it would. *See, e.g.*, *Stephens v. Clash*, 796 F.3d 281, 290 (3d Cir. 2015) (noting the statute of limitations from § 5533(b)(2)(i)

is longer than New York's statute of limitations in applying barrowing statute's "first bar" rule); *Getchy v. County of Northumberland*, 120 F. App'x 895, 898 n. 1 (3d Cir. 2005) (refraining from application of § 5533(b)(2)(i) because plaintiffs' claims accrued prior to the statute's implementation and would be untimely regardless). And at least one Judge of this Court has held that the extended statute of limitation applies in Section 1983 cases. *See Viney v. Jenkintown Sch. Dist.*, 51 F. Supp.3d 553, 556 (E.D. Pa. 2014). I find these cases persuasive, and I see no reason that federal courts should not import the limits of Section 5533(b)(2)(i) in appropriate Section 1983 cases.

4.  Defendants argue that the extended statute of limitations doesn't apply to Ms. Doe's claims because her action does not arise from her abuse. While I disagree, I do find the phrase "arising from" in the statute ambiguous. *See In re Telegroup, Inc.*, 281 F.3d 133, 138 (3d Cir. 2002) (holding phrase "arising from" ambiguous in Section 510(b) of the Bankruptcy Code). The statute is subject to both Defendants' narrow interpretation that it applies only to claims against those who could be criminally liable for the abuse, as well as a broader interpretation requiring only a causal connection between the abuse and the cause of action. *See Viney*, 51 F. Supp.3d at 556 (surveying cases interpreting "arising from" and holding Section 5533(b)(2)(i) requires only causal connection).

5.  Given that I find "arising from" ambiguous, Pennsylvania law directs me to look to the legislative intent to guide my interpretation of the phrase. *See* 1 PA. CONS. STAT. § 1921 (1972). The General Assembly amended Section 5533 to extend the statute of

limitations for sexual abuse victims in 2019. *See* Act No. 2019-87, H.B. No. 962. The legislative action was a response to findings of widespread sexual abuse in the Catholic Church and other institutions, such as the Boy Scouts and Solebury School. *See* PA Gov. Mess., Nov. 26, 2019; PA H.R. Jour., 2019 Reg. Sess. No. 24 at 510. The Grand Jury report that spurred the legislative action recommended a modification to the statute of limitations and noted that the "church was actively and systematically concealing clergy sex abuse." Report I of the 40th Statewide Investigating Grand Jury at 309.[1] From this, I conclude that the mischief that the General Assembly intended to remedy was, at least in part, institutional failures that enabled widespread child sexual abuse and "the object to be attained" was vindication of the rights of victims. § 1921(c). Indeed, the legislative intent supports the broader causal connection construction of "arising from" in Section 5533(b)(2)(i).

6. This causal connection construction comports, rather than conflicts, with *Williams-McCall v. Planned Parenthood of Southeastern Pennsylvania*, No. 201102540 (Phila. Ct. Com. Pl., Nov. 18, 2022). In that case, the court determined that the extended statute of limitations was "aimed at perpetrators **and those directly enabling them**." *Id.* at *8 (emphasis added). Applying this understanding, the court held that Section 5533(b)(2)(i) did not cover the asserted negligence claims against Planned Parenthood for

---

[1] Available at https://www.attorneygeneral.gov/wp-content/uploads/2018/08/A-Report-of-the-Fortieth-Statewide-Investigating-Grand-Jury_Cleland-Redactions-8-12-08_Redacted.pdf.

failure to report suspected abuse. *See id.* at *9. The court distinguished its case from *Viney* on the ground that "the abuse [was not] alleged to have taken place under the veritable watchful eye of [defendant], on its premises." *Id.* at *8; *see Viney*, 51 F. Supp. 3d at 554, 556. In other words, Planned Parenthood was not the perpetrator of abuse, and failure to report suspected abuse by an unknown third party did not directly enable it.

7.  But in this case, Defendants had a role in Ms. Doe's abuse that was absent in *Williams-McCall*. Ms. Doe's teacher groomed and sexually abused her for years, beginning when Plaintiff was a thirteen-year-old student in Defendants' school. The abuser, Larry Perry, was Defendants' employee, and some of the abuse occurred on school grounds. Now, Ms. Doe seeks to hold Defendants liable for their alleged roles in failing to prevent her abuse. Her claims, therefore, have a causal connection to her abuse and the extended statute of limitations applies to her claims. Her claims are timely.

**State-Created Danger**

8.  To prevail on a state-created danger theory, plaintiffs must prove: (a) the harm ultimately caused was foreseeable and fairly direct; (b) a state actor acted with a degree of culpability that shocks the conscience; (c) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts; and (d) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *See Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (*en banc*). The

fourth element's requirement of an actual affirmative act "is not intended to turn on semantics of act and omission. Instead, the requirement serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself." *Id.* at 179 (citation omitted) (cleaned up).

9. Ms. Doe fashions the Amended Complaint in terms of affirmative acts, such as "performing a grossly inadequate investigation" and "retaining a teacher they knew was a sexual predator" (ECF No. 17 ¶ 28), but these "attempts to redefine clearly passive inaction as affirmative acts" are insufficient to survive a motion to dismiss. *Morrow*, 829 F.3d at 178. Ms. Doe's allegations against Ms. Blunt are all claims that Ms. Blunt should have done more: she should have documented and reported complaints; she should have investigated; she should have terminated Mr. Perry. This does not evince state-created danger; it evinces inaction. *See id.* at 179. The Amended Complaint also fails under Ms. Doe's proposed "status quo" test for affirmative acts. The status quo was that Mr. Perry was a teacher. Continuing to employ him as a teacher did not change that status quo and so cannot be an affirmative act on which to base a state-created danger claim.

10. Ms. Doe's allegations against Ms. Holloman are similar, except Ms. Doe also infers that Ms. Holloman (or another unknown School District employee) took the affirmative action of disposing of cards and letters evincing a different student's abuse. Assuming Ms. Holloman did dispose of this evidence, that is not enough to support a state-created danger claim because it fails the "fairly direct" requirement. "To fulfill the

6

fairly direct requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit." *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013) (cleaned up). Destroying cards and letters between Mr. Perry and another student in 1998 cannot have precipitated Mr. Perry's abuse of Ms. Doe more than eight years later. *See id.* (defining precipitated as "to cause to happen or come to a crisis suddenly, unexpectedly, or too soon").

**<u>Supervisory Liability</u>**

11. The Third Circuit has identified two general ways in which a supervisor may be liable for a subordinate's unconstitutional acts: "First, liability may attach if [a supervisor], with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (overturned on other grounds) (cleaned up). Second, a supervisor may be personally liable if "she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* (same). "Failure to" claims are generally considered a subcategory of the first prong of supervisory liability, deliberate indifference. *See id.*

12. To show an official may be liable under the deliberate indifference prong, a plaintiff "must identify a supervisory policy or practice that the supervisor failed to employ,

and then prove that: 1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; 2) the defendant-official was aware that the policy created an unreasonable risk; 3) the defendant was indifferent to that risk; and 4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* at 317 (cleaned up).

13. To show an official may be liable under the second prong of supervisor liability, "knowledge and acquiescence," a plaintiff must plead and prove: (a) the supervisor had contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (b) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate. *See Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

14. Ms. Doe asserts that both Ms. Blunt and Ms. Holloman are liable for Mr. Perry's actions under the "deliberate indifference" prong. Taking the facts pled in the Amended Complaint as true, both Defendants knew of allegations of Mr. Perry abusing students and did not follow responsive and preventative policies, allowing Mr. Perry to abuse Plaintiff. In 1998, Ms. Holloman did not document, report, or investigate Mr. Perry after his then-girlfriend reported that she had witnessed Perry abusing a student in their home. From 2000-2003, Ms. Blunt dismissed a student's reports of Mr. Perry's inappropriate behavior towards her. And when a school police officer raised suspicions

about Mr. Perry's and relationship with Ms. Doe, Ms. Blunt only spoke with Mr. Perry and the reporting school police officer. The failures to document, investigate, and report these allegations of abuse, which School District policy required, make it plausible that Ms. Blunt and Ms. Holloman were indifferent to the risk of Mr. Perry's abuse of students and that such indifference caused Mr. Perry's violation of Ms. Doe's constitutional rights.

15. Ms. Holloman responds that she cannot be held liable under this theory because she was not Mr. Perry's supervisor when Ms. Doe's rights were violated. Ms. Hollman is correct that the law requires a supervisory relationship, but it is not clear that relationship must exist at the time of the constitutional violation. See *Jankowski v. Lellock*, 649 F. App'x 184, 188 (3d Cir. 2016). If a supervisor fails to get rid of a bad employee in Year 1, then the employee's continued conduct is foreseeable, and the supervisor arguably bears responsibility for the predictable bad acts in Year 2 or Year 3. (At some point, the temporal connection might become too attenuated, but that's a fact-specific determination that I can't resolve on a motion to dismiss.) What matters is whether a defendant like Ms. Holloman had a supervisory relationship at a time that she should have acted in a way that would prevent the constitutional violation, not whether that relationship continued until the foreseeable constitutional violation happened.

16. Ms. Doe also asserts that Ms. Blunt is liable for Mr. Perry's actions under the "knowledge and acquiescence" prong of supervisory liability. Ms. Blunt's knew about Mr. Perry's history of inappropriate behavior with students and about a school police officer's

suspicion of Plaintiff's abuse, There were also rumors throughout the school about Mr. Perry's relationship with Ms. Doe, such that Ms. Blunt had to have heard about the relationship. Yet Ms. Blunt did nothing more than speak to Mr. Perry. Construing these facts in the light most favorable to Ms. Doe, it plausible that Ms. Blunt had contemporaneous knowledge of Plaintiff's abuse and acquiesced to it.

**Municipal Liability**

17. To succeed on a claim for municipal liability under a "failure to" theory, a plaintiff must plead and prove that the municipality's failures amounted to deliberate indifference to constituents' constitutional rights and caused plaintiff's constitutional violation. See *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "A plaintiff sufficiently pleads deliberate indifference by showing that 1) municipal policymakers know that employees will confront a particular situation, 2) the situation involves a difficult choice or a history of employees mishandling, and 3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)) (cleaned up).

18. Ms. Doe asserts a municipal liability claim against the Philadelphia School District on a theory of failure to train, supervise, investigate, and discipline staff and employees. She has articulated facts supporting her claim, including but not limited to the following

        a.       Ms. Holloman and Ms. Blunt knew about allegations against Mr. Perry concerning other students over the course of five years but did not document, investigate, or report these allegations;

        b.       There is no evidence of an investigation in Mr. Perry's personnel file;

        c.       No one from the District contacted Mr. Perry's ex-girlfriend to follow up on her report of a student's abuse;

        d.       Teachers in the school knew about Mr. Perry's abuse of Ms. Doe and did not report it; and

        e.       A school police officer informed Ms. Blunt of his suspicions of Mr. Perry's abuse of Ms. Doe, but Ms. Blunt's only response was to speak with the Perry.

19.     It's possible that any one of these facts would be enough to demonstrate deliberate indifference, but I don't have to go that far. Viewing the facts in the light most favorable to Ms. Doe means that I took at the facts in totality, not in isolation. When I do that, they paint a picture of deliberate indifference. Had any of the District employees taken some action, be it documenting the allegations in Mr. Perry's file to show a pattern of complaints, investigating the allegations internally, reporting the allegations to law enforcement to investigate, or firing Mr. Perry, then Mr. Perry would not have been in a position to abuse Ms. Doe. These facts support an inference that the District's failure to implement more rigorous training and oversight amounted to deliberate indifference that caused Plaintiffs' constitutional injuries.

20. The District's arguments to the contrary are unpersuasive. First, it relies on the "policy or custom" municipal liability standard. But the "pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798. Second, the arguments ignore allegations that I must accept as true. For example, Ms. Doe alleges that "specific teachers who were friends with Perry definitively knew about the relationship [between Perry and Plaintiff] but did not report the abuse[.]" (ECF No. 17 ¶ 92.) This knowledge is different from the assumptions that *Jankowski* held teachers need not make. *Cf.* 649 F. App'x at 188. Third, whether the District investigated the allegations against Mr. Perry and the sufficiency of that investigation is the type of factual argument suited for a summary judgement motion. At this stage, it is enough that Ms. Doe supports her conclusion that the District undertook no investigation with facts, such as the absence of evidence of an investigation in Perry's personnel file and that his ex-girlfriend was not contacted regarding her report of a student's abuse.

In light of the foregoing, it is **ORDERED** that Defendants' Motion to Dismiss (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's state-created danger claim in Count I is **DISMISSED** for failure to state a claim. The Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that on or before April 21, 2023, Ms. Doe shall complete a *Monell* Case Statement, a form of which is available on my section of the Court's website.

Going forward, the supplementation requirement of Federal Rule of Civil Procedure 26(e) shall apply to that *Monell* Case Statement, so that if Ms. Doe learns in some material respect that the Case Statement is incomplete or incorrect, she shall serve a timely supplemental statement.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.